In re Ronald Edward MILLER, Norma
Faye Miller, Debtors.

James A. TABB and Jim Tabb
Corporation, Plaintiff,
v.

Ronald Edward MILLER, Norma Faye
Miller, Defendants.

Bankruptcy No. 18100487.

United States Bankruptcy Court,
W. D. Kentucky.

Oct. 1, 1982.

C. Randall Michel, Bowling Green, Ky.,
for plaintiff.

G. D. Milliken, Jr., Bowling Green, Ky.,
for defendants.

MEMORANDUM AND ORDER

MERRITT S. DEITZ, Jr., Bankruptcy
Judge.

After a state court judgment in the
amount of $69,585 was entered against
them, Ronald and Norma Miller filed bank-
ruptcy. They were promptly sued again by
the successful state court plaintiff, this
time in bankruptcy court in a complaint
seeking to have the judgment debt declared
nondischargeable.

As with two companion cases also decided
today, we find that relevant facts and is-
sues of law essential to a finding of nondis-
chargeability have been substantially adju-
dicated, and therefore that a new trial in
bankruptcy court is not necessary to our
determination.

The facts of this case speak most clearly
through the findings of fact and rulings of
law contained in the final judgment of the
Warren Circuit Court:

"(1) James Tabb and Ronald Miller en-
tered into an agreement to borrow $60,-
000 for their joint benefit. A loan was
secured from Surety Finance Company
and a warehouse owned by Jim Tabb
Corporation, a corporation solely owned
by James Tabb, was to be mortgaged as
security. Ronald Miller was to handle
the details of the loan and the warehouse
was conveyed by the Jim Tabb Corpora-
tion to Ye Olde Western Inn, a corpora-
tion wholly owned by Ronald Miller and
his wife, Norma Miller, for that purpose.

\*   \*   \*   \*   \*   \*

"(3) Miller and Tabb then agreed to
refinance the loan at the Bowling Green
Bank & Trust Company under the same
terms and conditions between Miller and

Tabb as had been agreed upon when the loan was made at the Surety Finance Company. Miller handled the negotiations with the bank, however, contrary to the agreement, Miller executed a mortgage on the warehouse property in the amount of $116,000 which secured not only the loan to refinance the loan with Surety Finance, but also to secure $56,000 which was the price of a restaurant property purchased by Miller from the bank. It was not until later that Tabb found out about the additional mortgage obligation on the warehouse.

\* \* \* \* \* \*

"(5) Miller, without the knowledge and consent of Tabb, but with the approval of the bank, then sold the warehouse to third parties for $85,000 and applied the proceeds on the $116,000 indebtedness at the bank. The jury found that at the time of the sale of the warehouse it had a value of $100,000.

### RULINGS OF LAW

"(1) Miller had no right to sell the warehouse without the knowledge and consent of Tabb and therefore is liable to Tabb for the value of the warehouse at the time of the sale.

\* \* \* \* \* \*

"Tabb, or his corporation, was the equitable owner of the warehouse . . ."

Compatible with the above rulings of law was an instruction to the jury "that as a matter of law Ronald Miller . . . had no legal right to sell the warehouse without the knowledge and permission of James Tabb."

The only question for this bankruptcy court to decide is whether there was, in the state court action, a substantial adjudication of facts proving a "breach of fiduciary duty" of the sort which would make the resulting obligation nondischargeable under Section 523(a)(4).[1]

We find that there was a clear adjudication of that question, and therefore that the doctrine of collateral estoppel bars further litigation of the matter in this court.

Under Kentucky law, pursuant to which the Warren Circuit Court jury was properly instructed and which would be applied by this court, there was a resulting trust between these parties. *Horn v. Horn,* Ky.App., 562 S.W.2d 319 (1978); accord, *Gibson v. Gibson,* Ky., 249 S.W.2d 53 (1952); *Wilson v. St. Clair,* Ky., 286 S.W.2d 554 (1955).

As plaintiff correctly points out in his brief, there was clearly a "defalcation" by Miller in performance of the resulting fiduciary duty by Miller, since "defalcation" has been taken to mean in the § 523(a)(4) context "a failure to meet a promise or expectation by a debtor acting in a fiduciary capacity", and even includes "a conversion under which the debtor intends to borrow property for a short time . . ." *Wilson v. Gentis,* 14 B.R. 369, 373 (Bkrtcy.S.D.Ohio 1981).

This is the classic case for the application of the collateral estoppel rule. The transcript of the trial in state court runs to hundreds of pages. The circuit court not only properly instructed the jury, but in cogent and unambiguous language in its resulting judgment branded Miller's conduct as a breach of trust rendering the debt nondischargeable in bankruptcy. Further trial of the facts would be a redundancy which would operate only to unduly postpone Tabb's enforcement of legal rights already established.

Incorporated herein is our supplementary memorandum dealing in more detail with the principle of collateral estoppel upon which our decision is based.

Upon the foregoing facts and reasoning we hold the debt of the defendants Ronald and Norma Miller to James A. Tabb and the Jim Tabb Corporation to be nondischargeable in bankruptcy. Judgment shall today be entered consistent with this opinion.

---

1. Our disposition of the case on this ground makes unnecessary a finding of "willful and malicious injury" under Sec. 523(a), also claimed by plaintiff.